

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
WILLIWILSONXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Chas. V. Castner
Chief, Eleemosynary Division
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-2836
Re: Payment of transportation expenses
by Waco State Home incident to placement
of children in homes outside the State
Texas.

This will acknowledge receipt of your letter of October 17, 1940, requesting the opinion of this department upon the following question:

"May the superintendent of the Waco State Home use funds of that institution in the placement of inmates in homes 'outside the State of Texas', having in mind the provisions of the last paragraph, page 301, of the Special Laws of the State of Texas, passed by the Regular Session of the Forty-Sixth Legislature?"

Section 5 of House Bill 256, Chapter 7, Special Laws 1939, Forty-Sixth Legislature, pages 238, 301, reads, in part, as follows:

"Except as herein otherwise provided, no money shall be expended for travel expenses except that specifically appropriated for said purpose; provided this limitation shall not apply to travel and transportation expenses of patients, inmates and Alabama-Coushatti Indians, of Indian Reservation and institutional employees' travel in connection with patients, inmates, pupils and Alabama- Coushatti Indians, including returning escapes, transfers, paroles, and placements of inmates and patients and transportation and travel expense of conveying Indians to and from United States Indian hospitals in Oklahoma and other hospitals or clinics in Texas, of Board of Control employees whose salaries are paid from institutional funds, and of institutional superintendents and the Indian agent, wherein specific amounts are omitted from the itemized appropriations; and such travel and transportation expenses may be paid from support and maintenance appropriations and or local institutional funds."

While the provision of the Eleemosynary Appropriation Bill quoted above, taken by itself, may be liberally construed to authorize the payment of transportation expense incurred in connection with the placement of residents of the Waco State Home, it must be interpreted together with other statues relating to the Waco State Home, one of which is Article 3259, Vernon's Annotated Civil Statutes, which reads in part as follows:

"Sec. 2. No child shall be dismissed from the Waco State Home untill some suitable home has been found for it, or it has become self-supporting and only then upon the written recommendations of the superintendent to the Board, or when any ward committed to said Home has become married with the consent of the Board and superintendent. Children may be placed for adoption only in homes approved by the Division of Child Welfare, State Board of Control. Upon the adoption or marriage of any such child, the visitorial and regulatory powers of said Board and superintendent shall terminate. Any child not adopted who goes out from this Home either under the custody of some adult or as self-supporting shall continue under the supervision and guidance of the Board. The Board or its representative shall visit the place where said child is living or employed, and it shall be the duty of the person having the custody of said child to answer all questions asked by such Board or representative concerning the conduct, employment, treatment, or condition of said child. If in the judgment of the Board it should be for the best interest of said child that it be returned to said Waco State Home, the Board is hereby empowered to have it returned." (Underscoring ours)

Note that any child not adopted going from the Home is under the continued supervision and guidance of the Board, and that the Board or its representative are required to visit the place where the child is living at regular intervals; and the child may subsequently be required to return to the Home.

Under Article 3259, the duty of supervision and the power of control remain in the Board after a child has been so placed, and not only would the difficulties of administration be great indeed, if, as in the present case, representatives of the Board were required to make regular visits to the child in its California home; but it is quite possible that Texas as the sovereign parens patriae would completely lose jurisdiction over the child to the State of California - California being bound to allow only by a comity it might not choose to recongnize the priority of the Texas claim. Goldsmith v. Salkey (Sup. Ct. 1938), 131 Tex. 139, 112 S. W. (2d) 165. Compare Milligan v. State (1884), 97 Ind. 355. As stated by Mr. Justice Cordoza 40 A. L. R. 937:

"The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless . . . "

Consequently, it is the opinion of this department and you are respectfully advised that funds appropriated for the Waco State Home may not be used to defray transportation expenses of inmates in connection with their placement in homes outside of State of Texas.

Very truly yours

ATTORNEY GENERAL OF TEXAS

s/ James D. Smullen


By James D. Smullen
            Assistant

JDS:GO:LDW

APPROVED NOV. 19, 1940

s/ Gerald C. Mann

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS


APPROVED OPINION COMMITTEE BY R.W. W. CHAIRMAN